**RODGER BALLAST CAR CO. et al. v. ENTERPRISE RAILWAY EQUIPMENT CO. et al.**

**No. 5012.**

Circuit Court of Appeals, Seventh Circuit.

July 14, 1934.

Hugh M. Morris, of Wilmington, Del., Charles J. Hardy and F. H. Gibbs, both of New York City, and George L. Wilkinson, of Chicago, Ill., for appellants.

George I. Haight and M. K. Hobbs, both of Chicago, Ill., for appellees.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

ALSCHULER, Circuit Judge.

This litigation involves validity and infringement of reissue patent to Hart, No. 16,-374, July 6, 1926, of original No. 1,522,624, January, 13, 1925. The specification states: "The present invention relates to dump cars, more particularly of the type known as ballast cars, and has for its object to provide a simple, economical, and efficient car by means of which ballast may be deposited either between the rails or outside of the rails, or both between the rails and outside the rails without flooding the track."

In the margin appear two of the claims,[1] claim 4 typifying the first four claims, which

---

[1] "4. A car of the class described having a bottom comprising a substantially V-shaped longitudinal hopper on each side of the center sill, a pair of downwardly swinging doors mounted in each of said hoppers at the apex thereof to discharge the lading either to the side of the car or between the rails; said doors being of a length sufficient to cause their swinging edges to move in an arc which is substantially tangent to the plane of deposited material at the angle of repose, the base of which angle is below the tops of the rails.

"5. A car of the class described having a center sill, a substantially V-shaped hopper on each side of the center sill, and doors mounted for swinging movement about longitudinally extending axes at the apexes of the hoppers, said doors extending from their hinging axes toward the center sill and being of a length sufficient to cause their swinging edges to remain adjacent each other and prevent material flowing between them in any substantial quantity until said edges are substantially in the planes which define the angle of repose of the deposited material resting upon a base below the tops of the rails."

were those of the original patent, and claim 5 the two claims added by the re-issue.

Figs. 1 and 2 are here shown.

horizontally toward the center sill, their outer upward surfaces contacting with the bottom of the sill.

FIG. 1

FIG. 2

The controversy concerns mainly the inner doors 14' of the hoppers on each side of the center sill 3 of the car, through which doors the ballast from the hoppers is dropped onto the roadbed between the rails 9.

Fig. 1 has an arcuate member 16 on each side of the center sill designed to prevent the ballast from starting to flow until after the opening doors had passed this member. The specification describes this feature in its treatment of Fig. 1, but the accused cars do not have it. Fig. 2 does not show this member.

The doors 14' are hinged at the apexes 11–11 of the hoppers. From the hinges they extend, when closed, a short distance in an upwardly slanting direction, where there is a bend across the doors, and they thence extend

The District Court decreed the patent to be invalid and not infringed by appellees' cars, and these are here the issues.

The art wherein these parties have wrought is an old one. As far back as 1887 Rodger was granted United States patent No. 374,006, for "Improved Self-Emptying Hopper-Wagons for Ballasting on Railways," wherein the invention was specified to consist of a hopper in the car with a door at the bottom, by opening which the moving car distributes the ballast evenly in a continuous heap between the rails. There appear in the record twenty other United States patents in the same art, granted from time to time, each presumably contributing something to it.

What, if anything, did Hart contribute, and is his patent valid? Other United States

patents in the prior art had shown hoppers on each side of a center sill, with bottom doors for dumping ballast between the rails and outside of them. Included in them is No. 937,416 to Campbell, 1909, to which further reference will be made.

When the inner doors 14' of the Hart patent are closed their outer edges are in close proximity with each other under the sill, and in such position the ballast will not be discharged. Owing to the peculiar shape of the doors as described, the arcs of their descent will apparently come into actual contact, thereafter separating until at about $15^b$ or $15^c$ of their arcs the edges of the doors are sufficiently far apart to permit ballast to begin passing between them. In the further descent of the doors the opening progressively enlarged and the flow of ballast increased, but by that time the tendency of the then well-descended doors is to restrain sufficiently the spreading of the ballast between the rails so that the rails may not be flooded.

Had the flow of the ballast commenced immediately upon the doors beginning to open, and not been held until the doors were about one-third opened, the greater tendency of the ballast to spread between the rails, and perhaps to flood them, would seem apparent.

■ We do not find in any of the prior art structures a construction which tends to hold the ballast from passing between the doors for any substantial time after the doors begin to open; and in this respect it seems to us the Hart structure shows some advance even in this crowded art. We see no reason for denying to it the prima facie quality of patentability which the granting of the patent in itself imports.

We find nothing in the record to indicate, from actual use, the practicability or utility of the invention beyond opinion evidence of experts that it possesses these qualities. It is conceded that no car (not considering the alleged infringing structures) has ever been built embodying the disclosure of the Hart patent. But according effect to the presumptive validity of the patent, we conclude that the District Court erred in decreeing invalidity, particularly as to claims 5 and 6.

Respecting the issue of infringement, the record discloses that in most essential respects the accused cars are the embodiment of prior art Campbell patent No. 937,416, of which we show Fig. 2.

FIG. 2

The hoppers 9 on each side of the center sill 2 have dumping doors 12 for dumping the ballast outside of the tracks and doors 13 for dumping between them. The inner doors hinge at hopper apexes 14 and contact with the hopper bottoms at 20. The arcs 11 of the descent of the doors indicate a very considerable distance between the doors at their nearest approach; and as the doors begin to descend from their point of contact 20 with the hopper bottoms, the ballast at once begins to flow from the hoppers and continues to flow more freely as the doors descend. True, there is some approach of the doors, but at no place is this sufficient to substantially interfere with the flow of the ballast; and so, through this earlier start of the flowage, before the doors are fully opened the tendency is for so much of the ballast to flow out that the rails may be flooded. It required an expert operator of the cars and of the doors to open them so rapidly and so skillfully that by the time they were sufficiently descended to exercise some restraint on the spreading of the ballast, sufficient ballast might not pass down to flood the rails.

It must be borne in mind that in the Campbell car, as well as in the Hart conception, and also in the accused cars, the skillful handling of the moving train of cars for properly depositing the rapidly descending ballast along the track is also a potent factor in achieving the desired end of avoiding flooding of the rails.

It appears that about 1,400 of these Campbell cars were manufactured and sold, and that for some years appellees discontinued making them, but made other models. Later, and after the date of the Hart patent, appellees began making the cars in question, selling about 2,000 of them. In this fact appellants assume to find some corroboration for their contention that the intervening Hart disclosure was incorporated into appellees' structure. But we do not find that argument of any greater potency than the fact that appellants themselves, large manufacturers of ballast cars, never built a car under the Hart patent, but suffered about half the pe-

riod of the Hart monopoly to elapse without making any use of it.

We reproduce an illustrated chart from appellees' brief which shows the comparative plans of the Campbell car, the accused structure, and an embodiment of the Hart re-issue, in respect to the features which have been considered.

In each 1 is the center sill; 2, the inner doors; 5, the door hinges at apex of hoppers; 6, contact point of door edges with hopper; 4, the arc of descent of the doors; 3, the rails.

It appears at a glance that in the accused structure the doors in their descent are never in position where they tend to obstruct the free flow of the ballast between them. When they leave the point 6 it is evident that the ballast begins at once freshly to flow, and continues uninterruptedly so to do, and will spread between the rails until such time as the doors have descended far enough to influence restraint of the spread. It appears that in their descent the doors are never less than ten inches apart, and that, in order to avoid flooding the rails, it requires practically that same agility and skill in handling them as is requisite with the Campbell doors. While the figures show the Campbell doors to be considerably farther apart than those in appellees' structure, the comparison in this respect is not with the Campbell doors, but with the Hart re-issue doors.

Since in the Hart car the ballast does not begin to flow until the doors have moved about a third of their course of descent, the disadvantage in the accused cars of the flow beginning when the doors commence to open requires the more rapid descent of the doors, and perhaps the greater skill in handling the doors and moving car to avoid flooding of the rails. In this distinguishing feature of the Hart car, which we have above pointed out as constituting the advance which Hart made, the structure complained of is wholly unlike that of Hart and does not adopt his principle or teachings.

The fact that the hopper apexes of the accused structure are more nearly together than in the Campbell car, and in this respect more like the car of the Hart re-issue, is not in our judgment material. Whether these apexes are placed nearer or farther from the perpendicular plane of the rails, or whether the doors are longer or shorter from hinge to edge, are matters of engineering judgment which do not involve invention. The Hart claims make no reference to any distinctive or relative location of the hopper apexes with reference to the rails, nor to any specific dimensions of the hopper doors.

We are satisfied that the accused structures do not infringe the Hart re-issue patent, and that the decree in respect thereto is correct.

It is ordered that the decree of the District Court be amended by eliminating so much of it as finds the Hart re-issue patent invalid, and inserting therein a clause finding said patent valid. As so amended, the decree of the District Court is affirmed. The costs of the appeal shall be borne equally by the parties.